[Crim. No. 4089. Fifth Dist. Jan. 27, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK EDDIE MOLINA, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Alfonso M. Cedillo, Deputy State Public Defender, and Joseph A. Filippelli for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and John W. Spittler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THOMPSON, J.*—Frank Eddie Molina, appellant herein, appeals his conviction by a jury of two counts of kidnaping (Pen. Code, § 207); one count of rape (Pen. Code, § 261); two counts of oral copulation (Pen. Code, § 288a, subd. (c)); one count of sodomy (Pen. Code, § 286, subd. (c)); and one count of robbery (Pen. Code, § 211). He was found to have been armed with a deadly weapon during the commission of each of the above offenses. He was sentenced to state prison.

We shall relate the sordid details of the above offenses as briefly as possible.

The testimony of the chief victim, Linda M., is substantially as follows. While Linda was shopping at a supermarket with her 17-month-old child, the appellant accosted her and forced his way into her car in the parking area, then ordered her to drive to an abandoned house in the country where the crimes above enumerated took place. The threat

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

of the knife and fear for her baby frustrated any attempt on her part to resist the unspeakable indignities and physical injuries inflicted upon her. She testified that the appellant took $24 from her purse before he released her.

The appellant at trial endeavored to establish an alibi. Appellant produced a number of witnesses who testified as to his presence at a church service on the evening in question. It was established that he had arrived at the church (one which he had only attended infrequently before that evening) some time after the services had commenced. His actual arrival time was sharply disputed by a number of witnesses on both sides of the issue. The most critical witness appears to have been the church's pastor, Reverend Campbell, who placed appellant's arrival time much later than that asserted by appellant.

Appellant's first contention is that reversal is compelled because the trial court erroneously denied appellant a complete transcript of his first trial for these offenses. The first trial resulted in a hung jury and a mistrial was directed. Prior to the commencement of the second trial, defense counsel made a request for a transcript of the evidence introduced at the first trial. This request was denied by Judge Ballantyne with the suggestion that appellant's attorney, who had represented appellant in the earlier trial as well as the present one, should be able to remember the testimony but that if he was unable to do so, he could request a partial transcript.

It is apparent from the record that at the time application for a complete transcript was made to Judge Ballantyne, neither the judge nor counsel was aware of the controlling cases upon the subject, i.e., *People v. Hosner* (1975) 15 Cal.3d 60 [123 Cal.Rptr. 381, 538 P.2d 1141] and *Shuford v. Superior Court* (1974) 11 Cal.3d 903 [114 Cal.Rptr. 601, 523 P.2d 641]. Neither of these cases nor any other bearing upon the point was cited or argued to Judge Ballantyne. The motion was orally presented at the time of trial setting on August 21, 1978. The court and counsel did not discuss the issue in the light of settled law. Defense counsel unequivocally stated that he was interested only in securing transcripts of the testimony of the victim and the prosecution's chief rebuttal witness on the issue of alibi, Reverend Campbell.

Judge Ballantyne's ruling was clearly error under *People v. Hosner, supra*, 15 Cal.3d 60, and had the matter there rested, a reversal would be required.

However, the matter did not there rest. Apparently defense counsel did his homework and discovered that he could require the court to give him what he wanted. He presented a written motion to Judge Allen on September 11, 1978, asking for a transcript of the testimony of the victim, citing *Hosner* and *Shuford* as authority; the motion was properly and promptly granted. On October 11, 1978, he filed a second motion for partial transcript and he obtained an order from Judge Allen for a transcript of the testimony of Reverend Campbell. No further requests for transcripts were made.

■ We are fully aware of the established rule that an indigent defendant is presumptively entitled to receive upon request the transcribed testimony given at a previous trial without any requirement of a showing of a particularized need for it. (*People v. Hosner, supra*, 15 Cal.3d at pp. 66-69.) However, we hold that *Hosner* does not compel reversal in this case because the appellant through his counsel actually received all that he requested. Although the initial request was for the entire transcript, when the court without having been cited any authority began to inquire as to appellant's need for such a transcript, defense counsel stated: "In fact, at this point, I know which witness . . . I'd like to make that request, that [the victim's] testimony be ordered transcribed and it is for that purpose."

It is appellant's argument that the initial effect of Judge Ballantyne's ruling denying him a full transcript was incurable error per se. Such an argument is specious. It is most apparent that when defense counsel's research demonstrated to him that his client was entitled to receive whatever he might wish in the form of transcripts, he addressed those requests to the court and they were granted. With full knowledge, as is shown by his citation of authority on the occasion of his motions to Judge Allen, that he was entitled to an entire transcript he can scarcely be heard to say with a clear conscience that had he requested a full transcript, it would not have been granted. His many endeavors to secure every advantage for his client, as was his duty, refutes any belated claim that he was fearful of asserting his client's rights. The only plausible (and honorable) explanation is that he did not ask for a complete transcript once he had discovered his entitlement to it because he did not want it. It would not require an undue amount of cogitation to come up with the stratagem that if he did not get a complete transcript, neither would the district attorney in all probability and thus some of the defense witnesses might be spared impeachment—an area in which the defense witnesses might be more vulnerable than the witnesses for

the prosecution since the defense witnesses for the most part were biased in favor of the appellant whereas the prosecution witnesses for the most part were totally objective.

We realize that this case presents us with difficult choices. We must either conclude that defense counsel declined to ask for the entire transcript because he did not want it, or the alternative is that defense counsel, once having ascertained through his research that he had incontrovertible authority to require the court to give him all of the transcript of the prior trial, nevertheless chose not to press the point because he wished to take advantage of the "built-in" reversible error of having been once denied a transcript and thus insure his client of a new trial if the outcome were unfavorable.

We find nothing in the record to lead us to believe that defense counsel as an officer of the court would resort to such a dismal strategy. The record demonstrates that he was a most diligent and tenacious advocate. We do not wish to, and find no need to attribute reprehensible conduct to him.

We conclude upon this point that Judge Allen's rulings cured any *Hosner* error committed by the first judge, since appellant received transcripts of all that he requested.

█ Appellant asserts other claimed errors relating to the admission of certain evidence.

The victim made a voice identification of appellant upon the basis of hearing a tape which presented five voices including that of appellant. Several grounds are set forth in an attack upon the composition of the voice panel and its physical presentation, all purporting to show that the procedure was impermissibly suggestive.

The test for the evaluation of a pretrial identification, whether it be a lineup or other procedure such as a voice identification, is set out in *People* v. *Faulkner* (1972) 28 Cal.App.3d 384, 391 [104 Cal.Rptr. 625]. As one would expect, the test is an examination of the totality of the circumstances by the trial court and thereafter a determination by the reviewing court whether there is substantial evidence to support the trial court's findings.

We have examined the record and have listened to the tape. We find ample support for the trial court's ruling of admissibility. The appellant's attorney requested that voices with accents be used since the appellant was of Mexican descent. This was done. As might be expected, the degree of accent in the voices varied from slight to considerable, but we did not detect any gross disparities singling out appellant's voice from the rest. The record does not disclose that the victim described the voice of appellant with any particularity prior to the making of the tape, ruling out any suggestibility on the part of the witness making the voice identification.

Another objection raised with respect to the admissibility of the voice tape identification is that the prosecution breached an agreement with defense counsel that defense counsel would be given an opportunity to hear the voice tape before it was played to the witness. It is true that there was some discussion with defense counsel that the officers would make an effort to accommodate him in this respect but the efforts of the officers to find defense counsel were unsuccessful. However, the record supports a finding that it was understood by all parties that in the event the officers were unable to find defense counsel they could go ahead and play the tape for the victim. We find no abuse in the use of the tape.

■ Appellant also urges that the court erred in admitting a black and white photocopy of a composite drawing of defendant made from the victim's description of him (a startlingly accurate, almost photographic portrayal of him) without adequate proof that the colored original could not be produced.

It is unclear from the record whether the original or a copy was admitted and our efforts to augment the record in this regard to determine the factual situation have been unavailing. In any event, we see no prejudicial effect if a photocopy was used instead of the original and appellant has not demonstrated that he was injured in any manner.

Appellant's effort to find error in the court's refusal to admit character evidence with respect to the credibility of his witness, Nancy Morrow, must fail for the reason that her credibility was not challenged. (See Jefferson, Cal. Evidence Benchbook (1972) § 28.14, pp. 488-489.)

The last assignment of error is that the court erroneously admitted evidence of an extrajudicial statement made by Roy Castillo. Roy

Castillo had been a tenant on the premises where the victim had been assaulted. He had seen a woman of the same general description as the victim being taken by an unidentified man to the assault scene. He denied being able to identify the man in question. Demonstrating some annoyance with the officers' continued questioning of him, he in effect stated that they should quit bothering him since they already had the man in custody who had committed the crime.

Officer Brown was permitted to testify as to Castillo's extrajudicial statement that the officers already had the man that had done it. The error claimed is that since Castillo had already admitted making such a statement in court, the testimony of Officer Brown was improper impeachment.

The record does not clearly demonstrate that Castillo had unequivocally admitted making the challenged statement to Officer Brown although he did ultimately substantially admit making it. In any event, we do not find any prejudice since the jury ultimately heard from the witness himself the very statement which is here challenged.

The judgment is affirmed.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied February 24, 1981, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1981.